# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| PEYTON ROARK, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **NO. 3:26-cv-00895** |
| | ) | |
| **15TH JUDICIAL DISTRICT OF** | ) | **JUDGE CAMPBELL** |
| **TENNESSEE CHILD SUPPORT** | ) | |
| **ENFORCEMENT AGENGY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Peyton Roark filed a pro se Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. No. 1) against the 15th Judicial District of Tennessee Child Support Enforcement Agency; the State of Tennessee's Department of Human Services; Karen Casey, in her official capacity as Assistant District Attorney; C.K. Smith, in his official capacity as Chancellor; Summer Watts, in her official capacity as Title IV-D Caseworker for Macon County, Tennessee; Susie Peace, in her official capacity as Title IV-D Caseworker for Trousdale County, Tennessee, "and Responding Interstate"; and the Chancery Court Clerk and Master for Macon County, Tennessee, in their official capacity. (*Id.* at 1.) Plaintiff also filed an application for leave to proceed in forma pauperis (IFP) (Doc. No. 3) and an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. (Doc. No. 4.)

## I. APPLICATION TO PROCEED AS A PAUPER

Plaintiff's IFP application reports minimal income in the form of family assistance, which he must use "to secure food and basic communication" because of his current unemployment "d[ue] to severe medical restrictions." (Doc. No. 3 at 5.) The application sufficiently demonstrates

that Plaintiff cannot pay the full civil filing fee in advance "without undue hardship." *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001). Accordingly, the IFP application (Doc. No. 3) is **GRANTED**. 28 U.S.C. § 1915(a).

## II. INITIAL REVIEW

Under the pauper statute, 28 U.S.C. § 1915(e)(2)(B), the Court must conduct an initial review and dismiss the Complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

A. <u>Facts</u>

Plaintiff is currently party to "two separate, distinct child support" cases that are ongoing in the Juvenile Court of Macon County, Tennessee. (Doc. No. 1 at 4.) Both minor children live in Macon County, as does "the current custodial petitioner." (*Id.* at 4–5.) However, an order was recently entered directing Plaintiff to appear on July 17, 2026 in Wilson County, Tennessee, and there to show cause "for non-payment" of child support or else face arrest. (*Id.* at 5.) That order was issued by Chancellor C.K. Smith of the 15th Judicial District Chancery Court,[1] on the same afternoon that Chancellor Smith signed an order recognizing Plaintiff's indigence. (*Id.*)

In May 2026, Plaintiff had "formally transmitted an official Notice of Medical Inability to Pay and a separate Notice of Due Process Violations via certified mail directly to the regional Title

---

[1] The Court takes judicial notice of the Smith County website, which states that "Chancery Court is a court of equity presided over by the honorable C. K. Smith, Chancellor. He is the chancellor for the 15th Judicial District of Tennessee comprised of Smith, Jackson, Macon, Trousdale, and Wilson counties." https://smithcotn.com/clerk-and-master/ (last visited July 6, 2026). *See also* Tennessee Administrative Office of the Courts website, https://www.tncourts.gov/courts/circuit-criminal-chancery-courts/judges/charles-k-smith (last visited July 6, 2026).

2

IV-D child support enforcement office and simultaneously to the Chancery Court Clerk and Master's office for Macon County, Tennessee." (*Id.*) He requested access to his complete case file, but these requests were obstructed by child support office caseworkers Summer Watts and Susie Peace. Peace then issued a threatening notice advising Plaintiff that he was in contempt of the support order and demanding immediate payment. (*Id.* at 6.) According to the letterhead atop this threatening notice, Peace has responsibility over "Trousdale County and Responding Interstate" matters, while a different caseworker has responsibility over Macon County cases. (*Id.*) Peace admitted that such cross-county enforcement actions were in line with the local judicial custom "to choose and switch geographic venues regardless of state boundary protections[.]" (*Id.*)

Plaintiff escalated his file request "to a state-level headquarters administrator at the Tennessee Department of Human Services," who directed the local office to release Plaintiff's file to him. (*Id.*) The file that was then released to Plaintiff was in disarray, and it failed to include records of a prior contempt proceeding in 2023, when Plaintiff had been forced to appear in a courtroom in Hartsville, Trousdale County, Tennessee to pay arrearages that presumably arose from his obligations under the same Macon County support order(s). (*Id.*) According to Plaintiff, the records of the 2023 proceeding would "physically prov[e] that Defendants' custom of running an automated, signature-free, out-of-venue financial extraction system stretches back several years[.]" (*Id.* at 6–7.)

After Plaintiff succeeded in convincing state officials to force local officials to release his file to him, "Defendants launched an aggressive campaign of First Amendment Retaliation." (*Id.* at 7.) In June 2026, Plaintiff went to the Macon County Chancery Court Clerk's Office to file a petition for contempt and to enforce a parenting time order against the children's mother. However, that filing was rejected. (*Id.* at 7.) Plaintiff was instructed that the Clerk's Office could not accept

3

his filing "until the accompanying Pauper's Oath" was evaluated and decided. (*Id.*) He was told "that he would have to wait for the paperwork to be returned to him via the mail, apply a physical wet signature, and return it by mail before any documents would be formally docketed." (*Id.*) An unnamed court employee mixed his pauper application together with his Notice of Medical Inability to Pay and Notice of Due Process Violations, "to conceal Plaintiff's medical evidence from the active child support enforcement dockets and retaliate against his whistleblowing to state headquarters." (*Id.*)

B. <u>Analysis</u>

The Complaint asserts two claims: (1) a Fourteenth Amendment due process claim based on Chancellor Smith's order to appear and show cause in Wilson County instead of Macon County, despite Plaintiff's indigence and physical restrictions, and (2) a First Amendment retaliation claim based on the use of "administrative collection loops, cross-county shuffles, file blockades, document deletions, and intentional public record manipulation to penalize, silence, and hide the physical medical evidence of an indigent citizen by stitching it behind an unrelated civil parenting docket for formally escalating grievances to state headquarters." (Doc. No. 1 at 8.) As relief, Plaintiff seeks an injunctive order "completely freezing all … proceedings against Plaintiff by the 15th Judicial District Child Support Enforcement Agency and the State of Tennessee Department of Human Services," a declaratory order recognizing the constitutional violations he claims, an award of compensatory damages against the state-agency defendants, and an award of punitive damages against the individual defendants. (*Id.* at 8–9.)

1. <u>Requests for Declaratory and Injunctive Relief</u>

In a factually similar case, another federal district court determined that it lacked jurisdiction to consider the plaintiff's request to enjoin state domestic relations proceedings. In

4

*Degroot v. Jackson Cnty., Michigan*, No. 2:26-CV-11399, 2026 WL 1161437 (E.D. Mich. Apr. 29, 2026), the district court considered a complaint and TRO motion filed by a plaintiff who had been ordered by a state court to pay child support, and who had a show cause hearing set. The plaintiff asked the district court to enjoin proceedings in the state court, including the show cause hearing and "any type of incarceration or enforcement of his child support orders." *Id.* at *1. The court held that it lacked jurisdiction to do so, reasoning as follows:

> The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits injunctions against state-court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* The "core message" of the Anti-Injunction Act is "one of respect for state courts[,]" and it "broadly commands" that state courts shall be "free from interference by federal courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (internal quotation marks and citation omitted). For that reason, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Id.* (internal quotation marks and citation omitted). Degroot fails to meet any of the limited exceptions to warrant federal intervention and, therefore, the Court will refrain from interfering with the state court domestic relations proceedings.

*Id.*

In the instant case, even if the Court had jurisdiction to intervene with respect to the Wilson County court's "cross-county" order to appear and show cause, principles of federalism and comity require that the Court abstain from intruding upon that matter through the exercise of its injunctive powers. Plaintiff effectively asks this Court to officiate the state court's enforcement attempts by recognizing "that local judges maintain a custom-driven authority to choose and switch geographic venues regardless of state boundary protections" (Doc. No. 1 at 6), so it is appropriate to "freez[e] all state-level" enforcement proceedings "pending a full adjudication on the merits" of his due process claim (*id.* at 8) since Defendants, by "ignoring distinct domestic relations origins[] and orchestrating an extrajudicial venue-shifting pincer specifically designed to penalize the Plaintiff[,] … have rendered the state forum wholly inadequate." (*Id.* at 4.) This amounts to an invitation to

5

this Court to "put [its] brethren of the state judiciary on trial," *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 828 (1966), for the manner in which they adjudicate compliance with support orders in the state-created judicial district that encompasses, *inter alia*, Macon and Wilson counties. The Court declines to do so.

Where state proceedings related to child custody or support are ongoing, the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971), "prevents the district court from ruling [on related requests for equitable or declaratory relief] because the proceeding implicates important state interests and [Plaintiff] has an adequate opportunity to raise his challenges" in state court. *Bodell v. McDonald*, 4 F. App'x 276, 279 (6th Cir. 2001) (citing *O'Shea v. Littleton*, 414 U.S. 488, 499–504 (1974)); *see also Evans v. Hepworth*, 433 F. Supp. 3d 1171, 1180 (D. Idaho 2020) ("[T]here is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law.") (quoting *DuBroff v. DuBroff*, 833 F.2d 557, 561 (5th Cir. 1987), and citing other circuit-court cases). *Younger* abstention is clearly appropriate in the circumstances of this case, where a federal judge is asked to countermand state administrative or judicial orders setting a hearing before a state judge in ongoing child support proceedings—an area where the state's interest is of "massive importance"—and to declare unlawful those methods of child support enforcement being employed against the federal plaintiff. *Alexander v. Morgan*, 353 F. Supp. 3d 622, 627–29 (W.D. Ky. 2018) (deciding to abstain "in accord with many courts that have found abstention appropriate where an individual brings a § 1983 suit to enjoin or modify state child custody and support proceedings") (citing cases). As in the case of *Rodgers v. Rodgers*, No. M2004-02046-COA-R3CV, 2006 WL 1358394 (Tenn. Ct. App. May 17, 2006), so here Plaintiff's challenges to "the constitutionality of the … administrative procedures for the

6

enforcement and collection of back child support," *id.* at *5, are properly litigated in the chancery court where the enforcement action is pending, not in this Court.

Plaintiff affirmatively argues for the "inapplicability of the Younger abstention doctrine" based on Defendants' "systematic bad-faith enforcement, intentional retaliation, and an unconstitutional campaign of administrative harassment." (Doc. No. 1 at 2.) But the exceptions to *Younger* abstention based on actions that are harassing or in bad faith, *see Doe v. Univ. of Kentucky*, 860 F.3d 365, 371 (6th Cir. 2017), require more threatening misconduct than the "administrative harassment" alleged here, which involves mishandling of Plaintiff's casefile and exhibits, the issuance of a letter threatening various consequences if Plaintiff did not pay what he was obliged to pay, and the like. (*See* Doc. No. 1 at 6–7); *cf. Doe*, *supra* (noting that the "types of threats, or other similar actions," which would trigger the harassment exception include "repeated threats by prosecutors designed to discourage individuals from asserting their constitutional rights"); *Alexander*, 353 F. Supp. 2d at 629 (bad faith and harassment are "exceptional circumstances" that are "'exceedingly rare, particularly where a plaintiff seeking to defeat an abstention argument has failed to avail himself first of state appellate processes before seeking relief in federal court'") (quoting *Tindall v. Wayne Cty. Friend of Court*, 269 F.3d 533, 539 (6th Cir. 2001)).

In short, the Court finds that it is required to abstain from deciding the declaratory claim before it, as well as any injunctive claim allowed by the Anti-Injunction Act.

### 2. Claims to Damages

Plaintiff requests that compensatory damages be awarded against Defendants 15th Judicial District Child Support Enforcement Agency and the State of Tennessee Department of Human Services, and that punitive damages be awarded against the individual defendants. (Doc. No. 1 at 8–9.)

7

As to the Complaint's demand for compensatory damages to remedy the claimed due process violation, Defendants 15th Judicial District Child Support Enforcement Agency and the State Department of Human Services are not "persons" subject to suit under 42 U.S.C. § 1983. *See Burt v. Tennessee Child Support Div. Dep't of Hum. Servs.*, No. 1:18-CV-220-TRM-SKL, 2018 WL 7916827, at *3 (E.D. Tenn. Nov. 20, 2018), *report and recommendation adopted*, 2019 WL 481176 (E.D. Tenn. Feb. 7, 2019) ("Neither the State of Tennessee nor DHS is considered a 'person' that can be sued under § 1983."); *Eldridge v. Gibson*, 332 F.3d 1019, 1021–22 (6th Cir. 2003) (finding that "the Thirteenth Judicial District is [not] a 'person' subject to suit under § 1983" because it "is clearly a branch of the state"). Rather, they are "subdivision[s] of the State of Tennessee," *Joy v. McKenzie*, No. 1:24-CV-1066-STA-JAY, 2024 WL 4761469, at *4 (W.D. Tenn. Oct. 29, 2024), *report and recommendation adopted*, 2024 WL 4758823 (W.D. Tenn. Nov. 12, 2024), and as such they enjoy the State's sovereign immunity from suit in federal court under the Eleventh Amendment. *Hoffman v. Tennessee Dep't of Child. Servs.*, No. 3:20-CV-00900, 2020 WL 6946606, at *2 (M.D. Tenn. Nov. 24, 2020) (citing, *e.g.*, *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc), and *Heithcock v. Tenn. Dep't of Children's Servs.*, No. 3:14-CV-2377, 2015 WL 4879107, at *5–6 (M.D. Tenn. Aug. 14, 2015)). "This immunity bars suits 'for injunctive, declaratory or monetary relief.'" *Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee*, 63 F.4th 510, 515 (6th Cir. 2023) (quoting *Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993)). The only exceptions to this immunity are "(1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017).

Section 1983 does not abrogate Eleventh Amendment immunity, nor has Tennessee consented to be sued under that statute. *Morgan*, 63 F.4th at 518. While the doctrine established in *Ex Parte Young* would allow a suit for prospective injunctive relief for a continuing violation of federal law against a state official in his or her official capacity, 209 U.S. at 159–60, no currently viable official-capacity injunctive claim is asserted in the Complaint.

As to punitive damages, despite initially naming the individual defendants in their official capacity only (*see* Doc. No. 1 at 4), the Complaint concludes by requesting that punitive damages be awarded against these defendants in their individual capacity only. (*See id.* at 8–9.) Chancellor Smith, the unnamed Macon County Chancery Court Clerk and Master, and Assistant District Attorney Karen Casey are all immune from liability in damages for their actions taken while performing their judicial, quasi-judicial, and prosecutorial functions. *Barnes v. Winchell*, 105 F.3d 1111, 1115, 1122 (6th Cir. 1997) (recognizing that "judges are generally absolutely immune from civil suits for money damages" unless (1) they are not acting as judges or (2) they are acting in the "complete absence of all [subject-matter] jurisdiction," for example, a probate court judge trying a criminal case); *Ward v. City of Norwalk*, 640 F. App'x 462, 466 (6th Cir. 2016) (finding that court clerk is entitled to judicial immunity from money-damages claim); *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 966 (6th Cir. 2021) (prosecutorial immunity protects "those acts falling within a prosecutor's role as advocate for the state and intimately associated with the judicial process") (quoting *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997)). The allegations concerning these Defendants' personal involvement with the events described in the Complaint are so sparse as to be virtually nonexistent. *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.") (citing *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991)). Any such personal involvement appears to be

limited to these Defendants' collaboration in the issuance of allegedly contradictory orders that require Plaintiff's appearance in Wilson County despite being recognized as a pauper in Macon County (Doc. No. 1 at 2, 5), as well as the Clerk's supervision of subordinates who are alleged to have deliberately obstructed or mishandled Plaintiff's paper filings. (*Id.* at 4, 7.) The Court has no trouble determining that these Defendants are immune from liability for whatever damages are claimed to have resulted from such actions taken while performing the duties entrusted to them.

That leaves the punitive damages claim against Summer Watts and Susie Peace, the Title IV-D Caseworkers in Macon County and Trousdale County, respectively. The allegations against Watts (construed favorably to Plaintiff) are that she refused to release Plaintiff's casefile to him until her superiors required her to, and then released a file that was "jumbled, fragmented, and incomplete." (Doc. No. 1 at 6.) The allegations against Peace are that she acted outside her Trousdale County jurisdiction and sent Plaintiff a threatening notice advising that he was in contempt of a support order and demanding immediate payment. (*Id.* at 6.) These allegations are entirely insufficient to support the First Amendment retaliation claim asserted against Watts and Peace.

"The government retaliates in violation of the First Amendment if (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Whiting v. City of Athens, Tennessee*, 170 F.4th 439, 448 (6th Cir. 2026) (citation and internal quotation marks omitted). To the extent the Complaint can be construed to allege that Plaintiff engaged in protected conduct when he "formally requested his

10

complete case file from the local child support office" (Doc. No. 1 at 6),[2] Watts's initial "blockade" of that file's release, and Peace's letter advising of the consequences of failing to pay amounts in arrears, which was allegedly sent "[i]n direct retaliation for asserting these rights" (*id.*), do not rise to the level of adverse action. Plaintiff was obviously not (nor would a person of ordinary firmness have been) deterred from continuing to pursue the release of his casefile after Watts initially declined to publish it to him, and Peace's letter advising of the consequences of continued delinquency on support payments—delivered to a person who does not dispute being unable to keep up with such payments—is not the kind of response that would deter a person of ordinary firmness from continuing to seek the production of his complete casefile. *See MacIntosh v. Clous*, 69 F.4th 309, 316 (6th Cir. 2023) (stating that, although "nothing justifies harassing people for exercising their constitutional rights," "threats or deprivations" may qualify as "so de minimis that they do not rise to the level of being constitutional violations") (citations and internal quotation marks omitted). The retaliation claim against Watts and Peace fails because it does not plausibly allege that either Defendant took any action toward Plaintiff that was sufficiently adverse to rise to the level of a constitutional violation.

### III. CONCLUSION

For the above reasons, this case is **DISMISSED** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. No. 4) is **DENIED** as moot.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. *Id.* § 1915(a)(3).

---

[2] The Complaint explicitly refers to retaliation for Plaintiff's conduct in "formally escalating grievances to state headquarters." (Doc. No. 1 at 8.) Watts and Peace's actions toward Plaintiff were taken before this formal escalation. (*See id.* at 6.)

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE